## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## SOUTHERN DIVISION

| | |
|---|---|
| REBEKKAH THOMAS,<br><br>REBEKKAH THOMAS AS NEXT FRIEND FOR N.T., A MINOR CHILD,<br><br>        Plaintiffs,<br><br>    v.<br><br>MONTGOMERY COUNTY, MARYLAND,<br><br>Serve on:<br>Marc Elrich, County Executive<br>101 Monroe Street, 2nd Floor<br>Rockville, MD 20850,<br><br>        Defendant. | **No. 25-cv-3672**<br><br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

## <u>INTRODUCTION</u>

1.      Plaintiff Rebekkah Thomas ("Thomas") is an employee of Defendant Montgomery County, Maryland ("Montgomery County"). Montgomery County unlawfully discriminated against Thomas because of her sex (including pregnancy and related medical conditions) by steadfastly refusing to provide her with adequate lactation accommodations and in one instance a reasonable break upon her return to work from maternity leave. In doing so, Montgomery County violated multiple federal civil rights laws, violated the Fair Labor Standards Act, and committed multiple negligent torts.

2.      Plaintiffs bring this action against Montgomery County to recover damages caused by its discriminatory actions pursuant to federal and state law.

## JURISDICTION AND VENUE

3.      This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 28 U.S.C. § 1331 because this civil action arises under the laws of the United States, specifically Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Pregnancy Discrimination Act ("PDA"); the Pregnant Workers Fairness Act ("PWFA"), 42 U.S.C. § 2000gg *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, as amended; and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, as amended by the Providing Urgent Maternal Protections for Nursing Mothers Act ("PUMP Act").

4.      This Court has supplemental jurisdiction over Plaintiffs' state law tort claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District and 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

6.      Thomas is an adult resident of Maryland and at all relevant times was employee of Defendant Montgomery County, Maryland, serving as a police officer in the Montgomery County Police Department ("MCPD") since January 28, 2013.

2

7.      N.T is a minor child and a resident of Maryland.  N.T.'s claims are brought by Thomas as next friend.

8.      Defendant Montgomery County, Maryland is a local government entity and employer with over 500 employees, with its principal offices located in Rockville, Maryland.  MCPD is a department of Montgomery County and is "subject to the general supervision of the County Executive and the Chief Administrative Officer." Mont. Co. Code 1A-201(a)(1); Mont. Co. Code 1A-202(b).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES AND LOCAL TORT NOTICE

9.      Thomas timely filed a Charge of Discrimination against Montgomery County with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on sex (pregnancy/pregnancy-related), disability, and pregnancy-related accommodations.

10.     On August 12, 2025, EEOC issued a Determination and Notice of Rights informing Thomas that the EEOC would not proceed further and providing notice of Thomas's right to sue within 90 days.

11.     Thomas timely filed this action within 90 days of her receipt of the EEOC Notice.

12.     Plaintiffs provided written notice of their tort claims to Montgomery County in accordance with the Maryland Local Government Tort Claims Act within one year after injury.

## FACTS

13.     Thomas has been employed by Montgomery County as a police officer with MCPD since January 28, 2013.

14.     Thomas's more than dozen-year tenure as a police officer has been exemplary.  Her yearly employee evaluations often cite her performance categories with "exceeds expectations" and often include numerous positive notes not only from her direct supervisor but also her chain of command.  Thomas has been awarded "Officer of the Quarter" for her District by her command staff.

15.     In 2022, Thomas became pregnant with her first child, N.T.

16.     In early 2023, Thomas took maternity leave from her employment with Montgomery County to give birth to and care for N.T.  N.T. was born on April 18, 2023.

17.     Thomas is currently pregnant with her second child.

18.     Thomas returned from maternity leave on June 20, 2023 and reported to work at the 1st District Station/Public Safety Headquarters ("PSHQ") building (her typical duty station) in a light duty capacity.

19.     Thomas made clear to her superiors at MCPD in advance of her return to duty that she was breastfeeding N.T. and therefore would need a safe and adequate space at work to pump breastmilk.

20.     However, Montgomery County failed to provide what Thomas needed. The room it provided for Thomas to pump breastmilk at PSHQ was dirty (trash was on the floor, Thomas observed milk stains left from prior users, and Thomas observed

that the couch had animal fur and dander on it); it contained no trash receptacle; it was unsafe (Thomas observed mold growing on the wall); and it was loud due to its close proximity to the gym.  It did not have a sign indicating that it was a "lactation room" or "nursing room."

21.    Thomas raised the issues with the room at PSHQ with her superiors at MCPD multiple times.  But nothing changed at PSHQ until approximately October 12, 2023.  This was only after Thomas filed a formal grievance on September 5, 2023, that was eventually granted by the Montgomery County Chief of Police.

22.    Because of Montgomery County's conduct with respect to the facilities at PSHQ, Thomas's milk production decreased dramatically.

23.    Over the summer and fall of 2023, MCPD required Thomas to both attend and teach classes at the Public Safety Training Academy ("Academy"), which she did on at least seventeen different days.

24.    The Academy also did not have a safe or adequate lactation room.  The room identified for Thomas's lactation needs was called "FACILITY MGMT." It did not have a sign on the door indicating that it is a lactation room or a way to lock the door from the inside; did not have a chair or table; did not contain a trash receptacle; and contained a partially opened container that likely housed hazardous materials (it contained a bucket labeled "Joint Compound," which had a Danger Warning on the side that said: "Danger Contains Crystalline Silica: May cause cancer (Inhalation); may cause damage to organs (liver, kidneys, respiratory system/digestive system) through prolonged or repeated exposure (Inhalation).").

25.     Thomas used that inadequate and unsafe room to express milk on her first two days at the Academy in the summer of 2023, standing in a virtually empty room holding her breast pumps to her breasts because there was no adequate space for her to sit or even to set up her pumping equipment.

26.     This resulted in extreme stress to Thomas, which was in addition to the stress that the room at the Academy already caused her because she was afraid that anyone could walk in on her at any point while she was in such a vulnerable state.

27.     The third day she was at the Academy during the summer of 2023, Thomas pumped milk in her car in 90-degree heat because she felt that was safer than using the "FACILITY MGMT" room inside.

28.     Thomas raised the issues with the Academy in her September 2023 grievance and otherwise.

29.     For the rest of her approximately fourteen days of duty at the Academy during the summer and fall of 2023, Thomas pumped in a combined female locker/bathroom, which was not sanitary, did not have a lock, and frequently had people coming and going who could see her.  Thomas felt safer utilizing the locker room due to it being female-only, rather than a dirty room with no lock where anyone, including males, could enter.

30.     This conduct by Montgomery County caused Thomas's milk production to further decline, particularly due to the continued stress it caused her, and harmed N.T. in the process.

6

31.    On November 6, 2023, MCPD required Thomas to attend firearms training.  Thomas advised the instructor that she needed a reasonable break to pump breastmilk. The instructor told Thomas that the class "isn't structured for a break" and that the more quickly the class moved through the course the more quickly it would be finished.  Montgomery County thus denied Thomas the ability to pump on schedule that day—she was delayed by more than two hours. Because of the significant delay in pumping, both of Thomas's breasts were engorged, she was in severe pain for two days, and her milk supply was significantly reduced.

32.    Because of Montgomery County's conduct and the concomitant reduced breast milk production, Thomas had to use an emergency supply of milk to feed N.T.

33.    Thomas has experienced significant mental and physical symptoms because of Montgomery County's conduct. These include but are not limited to: 1) insomnia; 2) weight loss of more than 5 pounds compared to pre-pregnancy weight; 3) depression; 4) anxiety; 5) exhaustion; and 6) substantial pain from engorged breasts.

34.    On information and belief, the lack of a safe and adequate lactation room at the Academy is ongoing.

35.    Thomas is worried that Montgomery County will continue to fail to provide a safe and adequate lactation room at the Academy and buildings where overtime may be offered when she returns from maternity leave after the birth of her second child.

7

36.     Title VII as amended by the PDA prohibits discrimination on the basis of pregnancy, childbirth, or related medical conditions, and requires that women affected by pregnancy, childbirth, or related medical conditions be treated the same as other persons not so affected but similar in their ability or inability to work. Montgomery County's conduct violated Title VII as amended by the PDA.

37.     The PWFA requires employers to provide reasonable accommodations for known limitations related to pregnancy, childbirth, or related medical conditions, unless the accommodation would impose an undue hardship on the employer. Montgomery County's conduct violated the PWFA.

38.     The ADA prohibits employers from discriminating against a qualified individual on the basis of disability in regard to terms, conditions, and privileges of employment.  Montgomery County's conduct violated the ADA.

39.     The FLSA as amended by the PUMP Act requires employers to provide "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk." 29 U.S.C. § 218d(a)(2).  It also requires an employer to provide "a reasonable break time for an employee to express breast milk for such employee's nursing child for 1 year after the child's birth each time such employee has need to express the milk[.]"  29 U.S.C. § 218d(a)(1).  Any "employer who violates" section 218d "shall be liable for such legal or equitable relief as may be appropriate to effectuate" its purposes "including without limitation employment, reinstatement, promotion, and

the payment of wages lost and an additional equal amount as liquidated damages."
29 U.S.C. § 216(b).

40.     Prior to her pregnancy, Thomas volunteered for and was granted significant overtime opportunities, which increased her bottom line and ability to care for her family. From September 2023 through approximately January 2024, Thomas regularly reviewed overtime postings and was not able to accept certain of them because the portal through Montgomery County's Office of Human Resources for Lactation Break Requests, the only system through which Montgomery County provided information about the availability and location of lactation rooms, did not provide that information for locations for which overtime was available. As a result, Thomas lost significant overtime pay opportunities.

41.     Because of the decreased milk production that was directly the result of Montgomery County's conduct, Thomas had to take four days of paid time off ("PTO") days from work in 2023 (40 hours) to allow her milk production to reset.  Thomas has therefore experienced significantly decreased hours of leave available to her for future use because of this conduct.

42.     Montgomery County willfully failed to provide such places the FLSA requires at the PSHQ, the Academy, and at municipal buildings where overtime was offered and that Thomas wanted to take from September 2023 through January 2024. It willfully failed to provide a reasonable break time to Thomas on November 6, 2023. Regarding the overtime opportunities, this failure was evidenced by those buildings not being listed on the system through which Montgomery County provided

9

information about the availability and location of lactation rooms. As a result, Thomas could not work overtime opportunities that she wanted to, and which were consistent with the overtime hours she worked in prior years before N.T. was born.

43.    As a direct result of Montgomery County's willful violations of the FLSA, Thomas could not and did not take a minimum of ten ten-hour shifts that were to be paid at a time-and-a-half rate of approximately $70.29/hour; she therefore lost $7,029 of wages.  Thomas is thus entitled to $14,058, which is two times the amount of overtime she wanted to work but could not because Montgomery County failed to provide the FLSA-required lactation space.

44.    Thomas was required to take PTO on at least 4 separate days (40 hours) to allow her milk production to reset after she was not provided an FLSA-compliant lactation space and when she was refused a reasonable break time.  Accrued PTO is wages. Thomas is entitled to either have this PTO time restored and an equal additional amount added to her balance as liquidated damages (80 hours), or to be paid two times the wages those PTO days are worth–which is $3,748.80 (at an hourly rate of $46.86).

45.    Thomas complied with the 10-day notice requirement of 29 U.S.C. § 218d(g) prior to commencing this lawsuit and in any event Montgomery County indicated by its non-action that had "no intention" of providing the required place.  29 U.S.C. § 218d(g)(2)(B).

46.    Montgomery County Code § 8-14C required at all times relevant to this complaint that Montgomery County provide a "lactation room" in county buildings

10

(with exceptions not relevant here) such as PSHQ and the Academy.    A "lactation room" per the Code is a "designated sanitary room, other than a bathroom, made available for expressing breast milk, that: (1) is shielded from view; (2) is free from public or coworker intrusion; (3) displays appropriate signage that indicates 'lactation room' or 'nursing room;' and (4) contains the following: (A) a chair; (B) a flat surface to place a breast pump; (C) can be locked or secured from the inside; (D) a small refrigerator; (E) a microwave; (F) at least one or more electrical outlets; and (G) any other related supplies as provided in regulations."  Montgomery County did not fully comply with these requirements with respect to the Academy and for the duration of approximately one year after N.T's birth the "Joint Compound" bucket remained in the designated room.  It complied with most of the requirements with respect to PSHQ but only after Thomas's grievance was granted.

47.    Montgomery County's repeated, willful failure to comply with its own Code § 8-14C establishes its negligence.  "We have often explained that a statute or ordinance can prescribe a duty and that violation of the statute or ordinance is itself evidence of negligence." *Kiriakos v. Phillips*, 448 Md. 440, 457 (2016) (cleaned up).

## CLAIMS FOR RELIEF

### COUNT ONE
Sex Discrimination in Violation of Title VII and the PDA
42 U.S.C. § 2000e *et seq.*

48.    Thomas re-alleges and incorporates by reference all allegations contained in the foregoing paragraphs as if fully set forth herein.

49.     Thomas is a member of a protected class as a woman who was lactating following childbirth.

50.     Thomas was qualified for her position as a police officer and was performing her duties satisfactorily.

51.     Montgomery County subjected Thomas to terms, conditions, and privileges of employment that were less favorable because of pregnancy and pregnancy-related lactation needs, including failure to provide private, sanitary lactation spaces and denial of timely breaks.

52.     Montgomery County's practices, including denying a scheduled break during firearms training and failing to maintain required lactation spaces, disparately impacted or expressly burdened Thomas because of her pregnancy-related lactation needs.

53.     Montgomery County's actions constitute discrimination based on sex (pregnancy/childbirth-related conditions) in violation of Title VII as amended by the PDA.

54.     Montgomery County's actions caused Thomas tangible harm and interfered with her ability to perform her job duties and to express breast milk safely.

55.     As a direct and proximate result of Montgomery County's discriminatory actions, Thomas has suffered damages including physical pain, emotional distress, humiliation, and lost benefits and privileges of employment.

**COUNT TWO**
Violation of the Pregnant Workers Fairness Act
42 U.S.C. § 2000gg *et seq.*

56.    Thomas re-alleges and incorporates by reference all allegations contained in the foregoing paragraphs as if fully set forth herein.

57.    Thomas experienced limitations related to pregnancy, childbirth, or related medical conditions, specifically the need to express breast milk during working hours.

58.    Thomas requested reasonable accommodations related to these pregnancy/childbirth-related needs, specifically a private, clean, lockable lactation space and reasonable break times to express milk.

59.    Thomas notified supervisors prior to returning to work on June 20, 2023 that she required a private, sanitary, lockable space and reasonable break times to express milk; reiterated these needs upon assignment to PSHQ and the Academy; filed a formal grievance on September 5, 2023.  She did not receive compliant space at PSHQ until approximately October 12, 2023, and never did at the Academy, demonstrating failure to timely accommodate and to engage in the interactive process.

60.    Montgomery County failed to timely provide these accommodations and denied a requested break on November 6, 2023.

61.    Montgomery County failed to timely provide reasonable accommodations and failed to engage in the interactive process despite repeated requests and a formal grievance on September 5, 2023; PSHQ was not made

13

compliant until approximately October 12, 2023, and the Academy remained noncompliant.

62.     The reasonable accommodations Thomas requested were feasible and were later partially implemented after her grievance, evidencing their availability and Montgomery County's failure to engage in the interactive process.

63.     Montgomery County's actions constitute unlawful employment practices in violation of the Pregnant Workers Fairness Act.

64.     As a direct and proximate result of Montgomery County's violations, Thomas has suffered damages including physical pain, emotional distress, humiliation, and lost benefits and privileges of employment.

**COUNT THREE**
Disability Discrimination and Failure to Accommodate in Violation of the ADA
42 U.S.C. § 12101 *et seq.*

65.     Thomas re-alleges and incorporates by reference all allegations contained in the foregoing paragraphs as if fully set forth herein.

66.     Thomas's pregnancy-related conditions, including the physical need to express breast milk, constitute a disability within the meaning of the ADA as amended.  Thomas's pregnancy-related conditions substantially limited one or more major life activities and/or major bodily functions, including endocrine and reproductive functions, and required time-sensitive expression of milk to avoid significant pain and risk of infection.

67.     Thomas was a qualified individual with a disability who could perform the essential functions of her job with reasonable accommodation.

14

68.    Thomas requested reasonable accommodations for her disability, specifically adequate facilities and breaks to express breast milk.

69.    Montgomery County failed to provide reasonable accommodations by not timely providing appropriate lactation facilities and breaks for Thomas.

70.    Montgomery County's actions constitute discrimination on the basis of disability and failure to provide reasonable accommodations in violation of the ADA.

71.    As a direct and proximate result of Montgomery County's violations, Thomas has suffered damages including physical pain, emotional distress, humiliation, and lost benefits and privileges of employment.

72.    In the alternative, if the Court determines lactation and related conditions are not disabilities under the ADA, Plaintiff's claims are fully redressable under the PWFA.

## COUNT FOUR
Violation of Fair Labor Standards Act as Amended by the PUMP Act
42 U.S.C. § 2000e *et seq*.

73.    Thomas re-alleges and incorporates by reference all allegations contained in the foregoing paragraphs as if fully set forth herein.

74.    The FLSA as amended by the PUMP Act requires employers to provide "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk." 29 U.S.C. § 218d(a)(2).

75.    It also requires an employer to provide "a reasonable break time for an employee to express breast milk for such employee's nursing child for 1 year after the

child's birth each time such employee has need to express the milk[.]"  29 U.S.C. § 218d(a)(1).

76.    Montgomery County failed to provide these FLSA-mandated requirements at the PSHQ, the Academy, and at municipal buildings where overtime was offered to Thomas.

77.    Montgomery County's violations of the FLSA were willful within the meaning of 29 U.S.C. § 255(a) entitling Thomas to a three-year limitations period, back wages, and liquidated damages pursuant to 29 U.S.C. § 216(b).

78.    As a direct result of Montgomery County's willful violations of the FLSA, Thomas missed out on a minimum of ten ten-hour overtime shifts that were paid at a time-and-a-half rate of approximately $70.29/hour; she therefore lost $7,029 of wages.  Thomas is thus entitled to $14,058, which is two times the amount of overtime she wanted to work but could not.

79.    Thomas was required to take PTO on at least 4 separate days (40 hours) to allow her milk production to reset after she was not provided an FLSA-compliant lactation space and when she was refused a reasonable break time.  Accrued PTO is wages. Thomas is entitled to either have this PTO time restored and an equal additional amount added to her balance as liquidated damages (80 hours), or to be paid two times the wages those PTO days are worth–which is $3,748.80 (at an hourly rate of $46.86).

16

## COUNTS FIVE THROUGH TWENTY-FIVE
### Negligence

80.     Plaintiffs re-allege and incorporate by reference all allegations contained in the foregoing paragraphs as if fully set forth herein.

81.     Montgomery County enacted legislation codified at Montgomery County Code § 8-14C requiring safe and sanitary lactation spaces for County employees, creating a duty of care to provide such accommodations to employees returning from maternity leave who need to express breast milk—for the benefit of those employees and their newborn children.

82.     The duties imposed by Montgomery County Code § 8-14C are mandatory and ministerial; Montgomery County's failures were not discretionary policy judgments.

83.     Montgomery County had a legal duty to provide Thomas with clean, private, and accessible lactation facilities as required by Montgomery County Code and as a general duty of care owed to its employees.  Montgomery County failed to do so on at least twenty-five different occasions in 2023 and 2024, each of which is a separate tort.  Thomas will provide the dates of these occasions in her Rule 26(a)(1) disclosures.

84.     Montgomery County knew or should have known that failing to provide adequate lactation facilities would cause foreseeable harm to Thomas and N.T., including physical pain, risk of infection, decreased milk supply, and emotional distress.  Montgomery County's failure to comply with its own Code § 8-14C establishes its negligence.  "We have often explained that a statute or ordinance can

17

prescribe a duty and that violation of the statute or ordinance is itself evidence of negligence." *Kiriakos v. Phillips*, 448 Md. 440, 457 (2016) (cleaned up).

85.     Montgomery County breached its duty of care to Plaintiffs by:

a.     Failing to provide clean, sanitary lactation spaces free from mold, animal hair, and trash;

b.     Failing to ensure lactation spaces had appropriate privacy features, including functioning locks;

c.     Failing to provide adequate furniture, refrigeration, and other necessary equipment for safe milk expression;

d.     Failing to adequately train supervisory staff about lactation accommodation requirements, as evidenced by the denial of a lactation break during firearms training on November 6, 2023;

e.     Failing to properly respond to and remedy reported deficiencies in lactation accommodations despite being on notice of the problems; and

f.     On one occasion, refusing to provide Thomas with a reasonable break to pump.

86.     As a direct and proximate result of Montgomery County's negligence, Plaintiffs suffered damages including:

a.     Physical pain and engorgement;

b.     Decreased milk supply directly affecting N.T.'s welfare;

    c.    Risk to and compromise of expressed milk due to unsanitary conditions;

    d.    Emotional distress and humiliation from being forced to use inappropriate spaces such as locker rooms or her vehicle to express milk; and

    e.    Loss of dignity and privacy in the workplace.

87.    Plaintiffs' damages were foreseeable consequences of Montgomery County's negligence in failing to provide appropriate lactation accommodations as required by County ordinance and reasonable standards of care.

88.    Montgomery County's negligence was not the result of a discretionary policy decision, but rather the failure to implement mandatory requirements for lactation accommodations established by County law and public policy.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant Montgomery County and grant the following relief:

A. As to Thomas, a declaratory judgment that Montgomery County's conduct violated Title VII as amended by the PDA, the PWFA, the ADA, and the FLSA as amended by the PUMP Act;

B. As to both Plaintiffs, a declaratory judgment that Montgomery County's conduct was negligent;

19

C. Injunctive relief requiring Montgomery County to maintain compliant lactation spaces and practices that adhere to the requirements of 29 U.S.C. § 218d and Montgomery County Code § 8-14C, implement appropriate training for supervisors and staff regarding lactation accommodations, establish monitoring protocols to ensure ongoing compliance, and cease all discriminatory practices; and require quarterly audits and reporting to the Court for 24 months;

D. Compensatory damages for emotional distress, humiliation, pain, and suffering in an amount to be determined at trial;

E. Damages for Montgomery County's negligence, including compensatory damages for physical pain and suffering, emotional distress, and other foreseeable harms resulting from its breach of its duty of care;

F. Payment of wages lost and an equal additional amount as liquidated damages under the FLSA/PUMP Act;

G. Reasonable attorneys' fees and costs incurred in this action, as provided by Title VII, the PWFA, the ADA, and the FLSA;

H. Pre-judgment and post-judgment interest as provided by law;

I. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues so triable pursuant to Federal Rule of Civil Procedure 38.

Dated:  November 7, 2025

**/s/ David R. Dorey**
David R. Dorey
D.C. Bar No. 1015586
FISHER & PHILLIPS LLP
1401 New York Avenue, NW
Suite 400
Washington, DC 20005
Email: drdorey@fisherphillips.com
Telephone: (202) 429-3707
Facsimile: (202) 978-3788

*Counsel for Plaintiffs*