IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| REBEKKAH THOMAS, *et al.*, | * | |
| Plaintiffs, | * | |
| | | Civil Action No. 8:25-cv-03672-PX |
| v. | * | |
| MONTGOMERY COUNTY, MARYLAND | * | |
| Defendant. | * | |

***

<u>**MEMORANDUM OPINION**</u>

Pending in this workplace discrimination suit is Defendant Montgomery County, Maryland ("the County")'s Motion to Dismiss for failure to state a claim. ECF No. 11. For the following reasons, the County's motion is granted in part and denied in part.

## I.    Background

Plaintiff Rebekkah Thomas ("Thomas") has worked as a police officer with the Montgomery County Police Department ("MCPD") since 2013. ECF No. 9 ¶ 21. During her many years with MCPD, Thomas consistently received positive performance evaluations and awards. *Id.* ¶ 22. After ten years of service, Thomas took maternity leave in early 2023, shortly before the birth of her first child, Plaintiff N.T. ("N.T."). *Id.* ¶ 24. When she was readying to return, Thomas told her superiors that she was breastfeeding N.T. and needed a "safe and adequate space at work to pump breast milk." *Id.* ¶ 27. This matter concerns the County's alleged failure to provide a space sufficiently resembling a lactation room in three distinct but related buildings. The Court describes the relevant events for each.

### A.    The PSHQ Room

Thomas returned to work at the Public Safety Headquarters ("PSHQ") building on June 20, 2023. ECF No. 9 ¶ 26. MCPD provided a "lactation room" that was neither safe, adequate nor sanitary (the "PSHQ Room"). *Id.* ¶ 28. The PSHQ Room was dirty with milk stains from

prior users, animal hair and dander on the couch, garbage strewn across the floor, and mold growing on the wall. *Id*. It was loud due to its proximity to the gym, and no signage alerted anyone that the space was being used as a lactation room. *Id*.

Thomas reported these issues to her superiors many times over the span of several months. ECF No. 9 ¶ 29. MCPD did not respond until October of 2023 and only *after* Thomas filed a formal grievance in September. *Id*. Ultimately, the Chief of Police granted her some relief, although the Amended Complaint does not clearly set out the specific changes that were made to the PSHQ Room. *Id*.

**B.     The Academy Room**

Additionally, Thomas avers that the County failed to provide a suitable lactation space at the Public Safety Training Academy ("the Academy"), despite the MCPD demanding that she attend classes as both a student and instructor. ECF No. 9 ¶ 31. To be sure, the Academy designated an area as "lactation room" (the "Academy Room") but it was little more than a janitor's closet. *Id*. ¶ 32. The room was barren. *Id*. It had no furniture or any appliances customary for a break room. *Id*. In the room, however, the County *did* store a partially opened bucket labeled "Joint Compound," that had a warning label which read: "Danger Contains Crystalline Silica: May cause cancer (Inhalation); may cause damage to organs (liver, kidneys, respiratory system/digestive system) through prolonged or repeated exposure (Inhalation)." *Id*. Like the PSHQ Room, the Academy Room had no lock or signage; it also had nowhere to deposit trash or even sit. *Id*. ¶ 32. Because of this, Thomas was forced to pump while standing and holding the lactation equipment in her hands. *Id*. ¶ 33. This proved near impossible, which meant that Thomas had to pump in her car in the 90-degree heat or the female lockeroom-bathroom every time she went to the Academy. *Id*. ¶ 37.

Again, Thomas complained about these conditions, at least as part of her September 2023 grievance, but offers no details as to when or how she complained. ECF No. 9 ¶ 36. As

2

far as Thomas knows, the County has done nothing to remedy the deficiencies of the Academy Room. *Id.* ¶ 42. These harsh, unsafe, unsanitary and inadequate conditions in which Thomas had been forced to pump adversely affected her mental health and, consequently, her milk production, which was painful for Thomas and harmful to N.T. *Id.* ¶¶ 30, 38.

### C.    The Firearms Training Facility and Overtime Locations

On November 6, 2023, Thomas attended a mandatory firearms training and told her instructor she needed reasonable breaks so she could pump. ECF No. 9 ¶ 39. The instructor denied the request because the class was not "structured for a break," but suggested that the quicker they complete the course, the quicker she could get to pumping. *Id.* This failure to provide any reasonable break caused Thomas's breasts to become very painful and engorged for two days. *Id.* Additionally, because the County has no meaningful way to reserve or make available lactation space for voluntary overtime shifts, Thomas could not work any overtime because she had nowhere to pump. ECF No. 9 ¶ 48.

As a result of MCPD's continued failure to provide Thomas with the lactation accommodations she required, Thomas has experienced severe stress, depression, anxiety, weight loss, and exhaustion. ECF No. 9 ¶ 31. Her milk production also plummeted. Consequently, Thomas was forced to take four days of paid leave to allow her milk production to reset. *Id.* ¶ 49.

After exhausting all potential administrative remedies through Montgomery County's Office of Human Rights and the Equal Employment Opportunity Commission, Thomas filed this action, ECF No. 1, and the County moved to dismiss the case. ECF No. 6. Thomas, in turn, amended the Complaint as of right. ECF No. 9. The Amended Complaint asserts pregnancy discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.* (Count I); the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg *et seq*. (Count II); the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. (Count III); the Fair Labor Standards Act, 42 U.S.C.

§ 2000e *et seq*. (Count IV); as well as twenty non-specific tort claims (Counts V–XXV).  *Id*.

¶¶ 56–96.  The County now moves to dismiss all counts for failure to state a claim under Federal

Rule of Civil Procedure 12(b)(6).  ECF No. 11.  The Court considers the sufficiency of each

claim in turn.

## II.   Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint.

*Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  In reviewing the motion,

the court must "accept the well-pled allegations of the complaint as true" and "construe the

facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff."

*Ibarra v. United* States, 120 F.3d 472, 474 (4th Cir. 1997).  The court also "may properly take

judicial notice of matters of public record."  *Phillips v. Pitt County Mem's Hosp.*, 572 F.3d

176, 180 (4th Cir. 2009).  To survive a motion to dismiss, the complaint's factual allegations

"must be enough to raise a right to belief above the speculative level on the assumption that all

the allegations in the complaint are true."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)

(internal citations omitted).  That showing must consist of more than "a formulaic recitation of

the elements of a cause of action" or "naked assertion[s] devoid of further factual

enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (internal

quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557).  "[A] plaintiff need not

'forecast' evidence sufficient to prove the elements of the claim.  However, the complaint must

allege sufficient facts to establish those elements."  *Walters v. McMahen*, 684 F.3d 435, 439

(4th Cir. 2012) (citation omitted).  "Thus, while a plaintiff need not demonstrate in a complaint

that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across

the line from conceivable to plausible.'"  *Id.* (quoting *Twombly*. 550 U.S. at 570).

## III.   Analysis

### A.   Title VII and the Pregnancy Discrimination Act (Count I)

4

The County argues the Title VII discrimination claim fails to plausibly aver that Thomas was treated adversely "*because* she is a woman who was lactating." ECF No. 11-1 at 5 (emphasis in original). The Title VII claim is subject to the well-known burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). For the claim to survive challenge, some facts must make plausible that Thomas (a) was a member of a protected class, (b) who was qualified to do the job, (c) the employer took adverse action against her, and (d) on account of her protected characteristics such as sex. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007); *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002); *see also McCleary-Evans v. Md. Department of Transportation, State Highway Administration*, 780 F.3d 582, 585 (4th Cir. 2015). If this prima facie showing is made, the employer must offer a legitimate, non-discriminatory reason for the adverse employment action, in which case the burden shifts back to the plaintiff to show the reason is pretextual. *See McDonnell Douglas*, 411 U.S. at 802.

The County seems to suggest Thomas cannot make the prima facie showing because nothing in the Amended Complaint reflects that the County's denial of adequate lactation space was motivated by discrimination. ECF No. 11-1 at 5. However, when construing the nature and severity of the County's denial of the very accommodations which Thomas was entitled pursuant to Title VII, the Court cannot conclude at the pleading stage that the claim must be dismissed. To understand why demands some history and context.

Discrimination based on pregnancy and pregnancy related conditions had not always been actionable under Title VII. *See Gen. Elec. Co. v. Gilbert*, 429 U.S. 125 (1976). Nearly, fifty years ago, in fact, the Supreme Court held in two closely aligned cases that pregnancy-based exclusions neither violated the Equal Protection Clause of the Fourteenth Amendment nor Title VII. *Id.*; *see also Geduldig v. Aiello*, 417 U.S. 484 (1974). As to Title VII, however,

Congress swiftly amended it with the Pregnancy Discrimination Act ("PDA"). 42 U.S.C. § 2000e-(k).

The PDA, in turn, "unambiguously expressed [Congress'] disapproval of both the holding and the reasoning of the Court in the *Gilbert* decision." *E.E.O.C. v. Houston Funding II, Ltd.*, 717 F.3d 425, 427 (5th Cir. 2013) (quoting *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 678 (1983)). Congress thus expanded the definition of sex-based discrimination to expressly include pregnancy and pregnancy-based conditions. *See* 42 U.S.C. § 2000e(k). Whereas Title VII had always made it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's. . . . sex," *id.* § 2000e–2(a)(1), the PDA made clear that,

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes.

*Id.* § 2000e(k).

Accordingly, where an employer treats a female employee adversely on account of her "medical condition" related to pregnancy, such as lactation, she has plausibly stated a Title VII discrimination claim. *See, e.g.*, *Houston Funding; see also Allen-Brown v. D.C.*, 174 F. Supp. 3d 463, 474 (D.D.C. 2016) (concluding denial of minimally adequate lactation space adversely affecting employee states a prima facie case of discrimination). *Cf. E.E.O.C. v. Vamco Sheet Metals, Inc.*, No. 13 Civ. 6088-JPO, 2014 WL 2619812, at *6 (S.D.N.Y. June 5, 2014) ("Where a plaintiff's claim focuses on adverse employment acts or conditions relating to her lactation breaks, as opposed to an alleged failure to accommodate a disability, an employer may be liable under Title VII."). This is because, most obviously, "lactation is a related medical condition of pregnancy for purposes of the PDA. Lactation is the physiological process of secreting milk from mammary glands and is directly caused by hormonal changes associated with pregnancy

6

and childbirth" and is thus a protected characteristic for which an employer may not treat the affected employee adversely. *Houston Funding*, 717 F.3d at 429.

Second, at the pleading stage the employee's burden is "not onerous" and must simply allow the reasonable inference that the employer treated her adversely on account of a protected characteristic. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). In this respect, the Supreme Court has recently confirmed that an employee need not show particularly "significant" harm to state a prima facie case, so long as some facts make plausible that the alleged discriminatory treatment "injures" the employee. *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 355 (2024) (quoting *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 657–58, 681 (2020)); *see also Herkert v. Bisignano*, 151 F.4th 157, 160 (4th Cir. 2025) (Fourth Circuit adopting the *Muldrow* standard, "requiring only 'some "disadvantageous" change in an employment term or condition'" to survive summary judgment) (quoting *Muldrow*, 601 U.S. at 354); *Hansley v. DeJoy*, No. 23-1426, 2024 WL 4947275, at *2 (4th Cir. Dec. 3, 2024) (instructing the district court on remand to "consider *Muldrow*'s effect on our caselaw.").

Viewing the complaint facts most favorably to Thomas, the claim must survive dismissal. Under the PDA, Thomas's need to express breastmilk is a protected characteristic for which Thomas cannot be subject to adverse treatment. 42 U.S.C. § 2000e–2(a)(1); *id.* § 2000e(k). Yet continuously, the County deferred or denied Thomas's need for a safe and adequate space to pump while at work, and to her detriment. ECF No. 9 ¶¶ 28–49. Indeed, the County knew, through Thomas's complaints, that its spaces were so deficient she physically was *unable* to pump. *Id.* ¶¶ 36, 67. She was, in turn, "harmed." Because the County refused to act, Thomas had to work in physical pain, with engorged breasts at certain times, and plummeting milk production at others—all conditions that her fellow employees did not have to endure while on the job. *Id.* ¶ 72. At least at the pleading stage, it is fair to say that the County's delay or denial of adequate spaces to pump harmed Thomas in a manner giving rise

to an inference of discrimination. *See id.* ¶¶ 28–49. Because the Court must allow all plausible claims to proceed, *Ibarra*, 120 F.3d at 474, the County's motion as to Count I is denied.

### B.    PWFA Claim (Count II)

Thomas next alleges violation of the Pregnant Workers Fairness Act ("PWFA"), 42 U.S.C. § 2000gg *et seq*. The PWFA requires covered entities to "make reasonable accommodations to the known limitations of pregnancy, childbirth, or related medical conditions of a qualified employee," unless providing such accommodations would impose "undue hardship" on the employer. 42 U.S.C § 2000gg-1(1). The PWFA also makes it unlawful to "require a qualified employee affected by . . . childbirth, or related medical conditions to accept an accommodation other than any reasonable accommodation arrived at through the interactive process." *Id.* § 2000gg-1(2).

Congress modeled the PWFA on the Americans with Disabilities Act ("ADA") to afford pregnant employees the protections not otherwise covered under disability discrimination statutes. *Keiper v. CNN Am., Inc.*, No. 24-CV-875, 2024 WL 5119353, at *2 (E.D. Wis. Dec. 16, 2024). Accordingly, the term "reasonable accommodation" under the PWFA "ha[s] the meaning[] given such term[] in section 101" of the ADA, and "shall be construed as such term[] [is] construed under such Act . . . including with regard to the interactive process that will typically be used to determine an appropriate reasonable accommodation." *Id.* § 2000gg(7) (citing 42 U.S.C. § 12111). Under the ADA, "reasonable accommodation" may include "making existing facilities used by employees readily accessible to and usable by individuals with disabilities" and "acquisition or modification of equipment or devices, [or] appropriate adjustment or modifications of . . . training materials or policies." 42 U.S.C § 12111(9).

To make plausible a failure-to-accommodate claim under the PWFA, some alleged facts must show (a) the plaintiff is a qualified individual, and (b) the employer knew of her pregnancy-related need and nonetheless failed to provide a reasonable accommodation. *See*

*Ventura De Brown v. Centers Lab NJ LLC*, No. 25CV13258, 2026 WL 1329713, at *5 (D.N.J. May 13, 2026) (citing *Keiper*, 2024 WL 5119353, at *2).  An employee is "qualified" if she can perform the essential functions of her job "with or without reasonable accommodation," and if "(A) any inability to perform an essential function is for a temporary period; (B) the essential function could be performed in the near future; and (C) the inability to perform the essential function can be reasonably accommodated."  42 U.S.C. § 2000gg(6).

It is undisputed that Thomas, a ten-year veteran officer, is a qualified individual.  ECF No. 9 ¶¶ 21–22.  Nor do the parties seriously disagree that Thomas required temporary accommodation for a lactation room and reasonable pump breaks to adequately perform her job.  *See id.* ¶ 67; ECF No. 11-1 at 6.  Rather, the fighting ground lies in whether Thomas has plausibly averred that the County denied her reasonable accommodations.  *Id.* at 6–7.  The Court reviews the complaint facts for each involved space.

### i.  The PSHQ Room

The County singularly contends that because it eventually rectified the deficiencies of the PSHQ Room, the accommodation claim is moot.  ECF No. 11-1 at 6.  The Court disagrees.

When viewing the Amended Complaint most favorably to Thomas, the County failed to provide sufficient space for nearly four months, and after Thomas's repeated pleas for assistance.  ECF No. 9 ¶ 69.  When a party "obstructs or delays the interactive process," a factfinder may reasonably infer the delaying party is not acting in good faith.  *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 323 (2011) (quoting *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135–36 (7th Cir. 1996)) (describing requirements of the interactive process under the ADA)).  That is this.  The County's months long delay forced Thomas to "accept an accommodation" other than a "reasonable accommodation arrived at through the interactive process."  *See* ECF No. 9 ¶¶ 26–29; 42 U.S.C § 2000gg-1(2).  *Cf. Pierce v. Nat'l Archives & Records Admin.*, No. CV TDC-19-2876, 2020 WL 7640835, at *2 (D. Md.

9

Dec. 23, 2020) ("While 'employers need not immediately implement or accept accommodations proposed by an employee' and need not move 'with maximum speed in addressing a request for accommodations,' an 'unreasonable delay in providing an accommodation for an employee's known disability can amount to a failure to accommodate.'") (quoting *Farquhar v. McCarthy*, 814 Fed. App'x. 786, 788 (4th Cir. 2020)); *Etkins v. Dive N. Hills, LLC*, No. 2:24-CV-01474-CCW, 2026 WL 1487445, at *8 (W.D. Pa. May 28, 2026) (explaining that, due to the recency of the PFWA's passage, courts will analogize PWFA claims to those made under the ADA). Although it may be the case that MCPD's delayed action was justified, this defense cannot be determined at the motion to dismiss stage. *Cf. Gilreath v. Cumberland Cnty. Bd. of Educ.*, Civ. No. 5:11–CV–627–BR, 2014 WL 3779090, at *8 (E.D.N.C. 2014) (declining to grant summary judgement on an ADA failure-to-accommodate claim where a jury could conclude that defendant failed to properly engage in the interactive process). Thus, the PWFA claim survives as to the PSHQ Room.

### ii.  The Academy Room

As to the Academy Room, the County insists that the claim fails because the Amended Complaint fails to allege that Thomas specifically notified MCPD of her need for a lactation room on the days she was at the Academy. ECF No. 11-1 at 6–7 (emphasizing that employers must only accommodate *known* limitations). Again, the Court disagrees. The facts viewed most favorably to Thomas make plausible that the County well knew Thomas required lactation accommodations in that it gave her essentially a janitor's closet dubbed a lactation room in the first place. *See* ECF No. 9 ¶ 32 ("The room identified for Thomas's lactation needs was called 'FACILITY MGMT'"). So that argument is a non-starter.

The County next argues that, even so, "the ADA does not require an employer to provide the employee's preferred accommodation, only a reasonable one." ECF No. 11-1 at 7 (citing *Reyazuddin v. Montgomery Cty.,* 789 F.3d 407, 414 (4th Cir. 2015)). But again, when

construing the complaint facts most favorably to Thomas, the "accommodation" was hardly reasonable. It was a small space with no furniture whatsoever, unless the County expected Thomas to sit on the bucket of toxic compound that was in the room. ECF No. 9 ¶ 32. And it can hardly be called a "preference" for Thomas to expect the County to comply with the law. *See Varney v. Health Carousel, LLC*, No. 1:24-CV-624, 2025 WL 2605783, at *6 (S.D. Ohio Sept. 9, 2025); *see also* 42 U.S.C. § 2000e *et seq.*; Montgomery County Code § 8-14C. Accordingly, the PWFA claim as to the Academy Room will not be dismissed.

### iii.   Firearms Training - Denial of Breaks

Next, as to the denial of breaks during firearms training on November 23, 2023, the County argues that the claim fails because Thomas had not notified MCPD that she needed breaks. ECF No. 13 at 7. This argument is unavailing because the PWFA does not require advanced notice of the need for breaks, but simply that known limitations of the employee be reasonably accommodated. *See* 42 U.S.C § 2000gg-1. Further, Thomas's request for a break was flatly denied without legitimate explanation. ECF No. 9 ¶ 39. On its face, the accommodation request was as reasonable as the response was not. *Cf. Varney*, 2025 WL 2605783, at *6 ("[t]he 'reasonableness' inquiry surrounding accommodations is often premature at the motion to dismiss stage."). Thus, the PWFA claim survives on the County's refusal to give Thomas a break in instruction so that she could pump.

### iv.   Lactation Rooms at Overtime Locations

Last, Thomas faults the County for having no mechanism by which she could confirm the availability of lactation spaces for overtime work locations. ECF No. 9 ¶ 48. As Thomas describes it, in the past, she routinely worked overtime. *Id.* But now, because the County did not provide sufficient information about whether lactation space is available for overtime assignments, Thomas avoided signing up for overtime work. *Id.* The County does not specifically challenge this liability theory. *See* ECF No. 11-1 at 5–7. Accordingly, the PWFA

11

claim proceeds as pleaded.

### C.      The Americans with Disabilities Act (Count III)

Thomas brings a companion ADA discrimination claim premised on the County's alleged refusal to provide her with safe and adequate lactation spaces.  ECF No. 9 ¶ 78.  The ADA prohibits disability related discrimination in the workplace, 42 U.S.C. § 12112(a), to include the failure to provide reasonable accommodations for disabled employees.  *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 579 (4th Cir. 2015).  "Disability" under the ADA is "a physical or mental impairment that substantially limits one or more major life activities" such as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(1) & (2)(A).  Major life activities may also include, per federal regulations, "[t]he operation of a major bodily function, including functions of the . . . neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions. . . ."  29 C.F.R. § 1630.2.  While "substantial limitation" must be construed broadly, the disability must be shown to "limit the ability of an individual to perform a major life activity as compared to most people in the general population."  *See id.* § 1630.2(j)(1)(i), (ii).

The Amended Complaint offers no facts to make plausible that lactation alone qualifies as a disability under the ADA.  *See* ECF No. 9 ¶¶ 73–80.  Rather, the pleading merely recites, in boilerplate fashion, the ADA and implementing regulations without any facts that could nudge the claim from possible to plausible.  *See Iqbal*, 556 U.S. at 679.  Without more, this Court, like every other to reach this issue, cannot conclude that the normal bodily function of lactation, without complication, qualifies as a disability under the ADA.  *See, e.g., Harless v. City of Raleigh*, No. 5:24-CV-478-BO-BM, 2025 WL 1762252, at *2 (E.D.N.C. June 25, 2025) (noting that the Equal Employment Opportunity Commission does not include lactation in its

laundry list of potential pregnancy related disabilities); *Spagnolia v. Charter Commc'ns, LLC*, Case No. 21-CV-01787-KLM, 2023 WL 3317781, at *11 (D. Colo. May 5, 2023) ("[L]actation is not a protected activity or disability under the ADA.") *aff'd*, No. 23-1190, 2024 WL 3271816 (10th Cir. July 2, 2024); *Weaver v. GAT Airline Ground Support, Inc.,* No. CV 23-869, 2024 WL 757030, at *8 (W.D. Pa. Feb. 20, 2024) (clogged duct during lactation not a disability under the ADA because "neither normal pregnancy nor normal post-pregnancy [physical conditions] qualify as an actionable disability"); *Martinez v. N.B.C., Inc.*, 49 F. Supp. 2d 305, 308–10 (S.D.N.Y. 1999) ("Every court to consider the question to date has ruled that 'pregnancy and related medical conditions do not, absent unusual conditions, constitute a [disability] under the ADA.'") (internal citation omitted).  Accordingly, Count III is dismissed.

### D.      The Fair Labor Standards Act (Count IV)

Next, as to the Fair Labor Standards Act ("FLSA"), claim, Thomas confines her cause of action to the Providing Urgent Maternal Protections for Nursing Mothers ("PUMP") Act, 42 U.S.C. § 2000e *et seq.*  Specifically, the Amended Complaint avers that the County's refusal to grant her a reasonable break on November 6, 2023, and failures to provide adequate lactation rooms at PSHQ, the Academy, and overtime locations make plausible a violation of the Act. ECF No. 9 ¶¶ 81–87.

The PUMP Act requires employers to provide two main accommodations for lactating employees: (1) "a reasonable break time for an employee to express breast milk . . . each time such employee has need to express the milk" and (2) "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk"  29 U.S.C. § 218d(a)(1)–(2).  Per the Department of Labor's ("DOL") guidance in its May 2023 Field Assistance Bulletin for enforcement of the PUMP Act,[1] a lactation room cannot be a bathroom, because "using a bathroom to pump breast

---

[1]  The Court takes judicial notice of the Bulletin, at https://www.dol.gov/sites/dolgov/files/WHD/fab/2023-2.pdf.

milk raises health and safety concerns, which may include the risk of contracting bacteria in breast milk or breast pump equipment." U.S. Dep't of Labor, Wage & Hour Div., Field Assistance Bulletin No. 2023-02, Enforcement of Protections for Employees to Pump Breast Milk at Work (May 17, 2023) at 4. Further, the DOL requires employers to "ensure privacy, for example by displaying a sign when the space is in use or providing a lock for the door." *Id.* Additionally, the location "must be functional as a space for pumping," and provide a place for the nursing employee to sit "other than the floor." *Id.* As for the denial of an adequate lactation room, the employee must give notice to her employer and allow ten days for the employer to come into compliance before filing suit. *Id.*; *see also* 29 U.S.C. § 218d(g)(1).

The County singularly contends that Thomas failed to provide "notice" before suing under the PUMP Act. ECF No. 11-1 at 9. The plain language of the PUMP Act requires notice only as to denial of adequate lactation space, but not as to denial of breaks. *See Dillard v. Kum & Go, L.C.*, No. 2:24-CV-285-TS-JCB, 2025 WL 961516, at *3 (D. Utah Mar. 31, 2025) ("Because the PUMP Act includes a clear notice requirement as to claims brought under § 218d(a)(2), the space requirement, but does not include a notice requirement for § 218d(a)(1), the break requirement, the Court will presume Congress purposefully omitted a notice requirement from § 218(a)(1)."). Accordingly, the Court will not read a notice requirement that contravenes the plain language of the statute. The PUMP Act claim as to the denial of a break on November 6, 2023, will proceed.

Next, as to the alleged denial of an adequate lactation room at the Academy, Thomas did plead that she had notified her supervisors of her need for a lactation space. ECF No. 9 ¶¶ 29, 36. That notice, in combination with the fact that her supervisors required her to both teach and attend training courses at the Academy, makes plausible a violation at this stage. *See* Federal Rule of Civil Procedure 9(c) ("In pleading conditions precedent, it suffices to allege

14

generally that all conditions precedent have occurred or been performed.").[2]

The County alternatively argues that the PUMP Act claim fails as to the PSHQ and Academy Rooms, relying on *Walls v. Abington Surgical Ctr.*, 758 F. Supp. 3d 376, 386 (E.D. Pa. 2024). ECF No. 11-1 at 10. The County particularly urges the Court to follow *Walls* because, even though it applied the provision of the FLSA expressly replaced by the PUMP Act, the County claims that the provisions are similar enough that this Court should nonetheless find *Walls* persuasive. *Id. Walls* offers no help to the County.

For one, it makes little sense to find "persuasive" a case which emphasized that it was guided by a now repealed provision of the FLSA, not "the more expansive PUMP for Nursing Mothers Act." *Walls*, 758 F. Supp. 3d at 386 n.4. Nor do the cases bear sufficient factual resemblance to convince the Court that a similar outcome is compelled here. When viewing the facts most favorably to Thomas, the PSHQ and Academy rooms suffered from more than just a missing lock. *Cf. id.* at 382. The PSHQ Room was filthy, small, and sufficiently inadequate even by County standards that eventually it took remedial action. ECF No. 9 ¶¶ 28–29. The Academy Room is even more shocking in its deficiencies. *See id.* ¶ 32. Contrary to DOL guidance, a makeshift space with no furniture, nowhere to sit, and a bucket of toxic compound nearby is *not* what the PUMP Act envisioned as an adequate space "to express breast milk." *See* ECF No. 9 ¶ 32; 42 U.S.C. § 218d(a)(2). As far as provision of a space "free from intrusion," *id.*, Thomas was so afraid of male colleagues walking into the Academy Room that she pumped in her car in the 90-degree heat. ECF No. 9 ¶ 35. Furthermore, if a bathroom is considered too unsanitary to be used for lactation purposes, it does not logically follow that a room with trash on the floor, animal dander on the couch, and mold growing on the walls would suffice. *Id.* ¶ 28. For these reasons, Count IV will not be dismissed.

---

[2] However, any claim regarding the County's failure to provide lactation room information for overtime locations fails. Thomas does not allege that the overtime locations *actually* lacked such accommodations, or, even if they did, that she explicitly notified MCPD of any failure to provide pumping spaces at the locations, as required under 42 U.S.C. § 218(g)(2). *See* ECF No. 9 ¶ 48.

### E.    Tort Claims (Counts V–XXV)

Lastly, as to the negligence claims, Thomas attempts to import the County's alleged violation of its own building code as alone sufficient to state a negligence claim.  ECF No. 9 ¶¶ 88–96 (citing Montgomery County Code § 8-14C).  To be sure, section 8-14C of the Montgomery County Code requires the Department of General Services ("DGS") equip every new and existing County building with a "lactation room," which is a:

> [D]esignated sanitary room, other than a bathroom, made available for expressing breast milk, that: (1) is shielded from view; (2) is free from public or coworker intrusion; (3) displays appropriate signage that indicates 'lactation room' or 'nursing room;' and (4) contains the following: (A) a chair; (B) a lock secured from the inside; (D) a small refrigerator; (E) a microwave; (F) at least one or more electrical outlets; and (G) any other related supplies as provided in regulations.

Montgomery Cnty. Code § 8-14C(a).

Thomas contends that under *Kiriakos v. Phillips*, 139 A.3d 1006, 1016 (Md. 2016), a violation of section 8-14C(a) gives rise to a tort duty because it is the kind of statute that is aimed at protecting a class of individuals, in this case, lactating women.  ECF No. 9 ¶¶ 88–93 (citing *Kiriakos*, 139 A.3d at 1016).  As the *Kiriakos* Court explained, where the law in question covers "the kind of injury intended to be prevented," then violation of that law "establishe[s] a prima facie case of negligence."  139 A.3d at 1016 (relying on *Brooks v. Lewin Realty III, Inc.*, 378 Md. 70, 78 (2003)) (explaining the "Statute and Ordinance Rule").  Central to this liability theory, however, is that the enactment of the statute creates a "protected class," and the violation of the same is the proximate cause of injury.  *Id.*

Without addressing whether this ordinance is the kind that *should* fall within the scope of the Statute and Ordinance Rule,[3] no duty can exist until the Code takes effect.  Here, the Code did not require compliance until August 2024.  *See* 2022 L.M.C., ch. 26, §2 (DGS was

---

[3] Historically, the Statute and Ordinance Rule has applied to public safety laws that are meant to prevent the highly foreseeable and severe injuries that result from a certain activity, such as allowing underage drinking on one's property.  *See, e.g.*, *Kiriakos*, 139 A.3d at 1011.

not required to equip all County buildings with lactation rooms until August 2024).  But the alleged failures to provide such rooms occurred between June of 2023 and January of 2024. ECF No. 9 ¶¶ 26, 48.  Accordingly, as a matter of law, Thomas cannot plausibly aver that the County's acts or omissions constitute a violation of Section 8-14(C).[4]  *Id.  See also Fried v. Archer*, 775 A.2d 430 (Md. Ct. Spec. App. 2001) ("[A] government's offer of safety-related services does not, in itself, create a special duty of care.  'We do not believe that a special relationship, creating a tortious duty, is created by a governmental decision to legislate safety programs in a particular industry, unless that duty is expressly created by the statute.'") (quoting *Willow Tree Learning Ctr., Inc. v. Prince George's Cnty., Md.*, 584 A.2d 157 (Md. Ct. Spec. App. 1991)).  Nor can she claim that the proximate cause of her injury was the County's violation of a code when it had not yet violated the same.  *See* 2022 L.M.C., ch. 26, §2.  Accordingly, a negligence claim premised on this supposed code violation necessarily fails.

Moreover, even if the Code were in effect, the claims against the County appear barred under Maryland's Local Government Tort Claims Act ("LGTCA") because they are asserted solely against the County.  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-303 (West).  Generally, "counties enjoy governmental immunity from tort liability with respect to nonconstitutional torts based on activity categorized as governmental." *Housing Auth. of Balt. City v. Bennett*, 754 A.2d 367, 370 (Md. 2000) (internal quotation marks and citations omitted).  Under the LGTCA, counties have not waived governmental immunity from tort liability, but rather, each county provides "limited indemnity to county employees for non-malicious tortious acts or omissions committed in the employees' scope of employment." *Paulone v. City of Frederick*,

---

[4]Additionally, while the Amended Complaint broadly pleads negligence based on the County's "[f]ailing to adequately train supervisory staff about lactation accommodation requirements, as evidenced by the denial of a lactation break during firearms training on November 6, 2023; e. Failing to properly respond to and remedy reported deficiencies in lactation accommodations despite being on notice of the problems; and f. On one occasion, refusing to provide Thomas with a reasonable break to pump," ECF No. 9 ¶ 93, none of these actions are prohibited under Montgomery County Code section 8-14C.

17

787 F. Supp. 2d 360, 378 (D. Md. 2011); *see also Livesay v. Baltimore Cnty.*, 862 A.2d 33, 44 (Md. 2004) (noting that under the LGTCA, the liability of a county is "dependant [sic] on that of its employees and it 'may only be held liable to the extent that a judgment could have been rendered against ... an employee under this subtitle.'" (citing § 5–303(e)).   Thomas alleges 20 nonspecific negligence claims solely against the County, and for which the County has not waived immunity.   ECF No. 9 ¶¶ 89–96.   Accordingly, dismissal is proper on immunity grounds as well.

### IV.    Dismissal With or Without Prejudice

Whether to dismiss claims with or without prejudice remains well within the district court's discretion.  *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013) (citing *180s, Inc. v. Gordini U.S.A., Inc.*, 602 F. Supp. 2d 635, 638–39 (D. Md. 2009)); *Carter v. Norfolk Cmty. Hosp. Ass'n*, 761 F.2d 970, 974 (4th Cir. 1985).  Generally, when a plaintiff has not been afforded an opportunity to amend the complaint, dismissal should be without prejudice.  *Cosner v. Dodt*, 526 F. App'x 252, 253 (4th Cir. 2013).  However, if amendment to the pleadings would be futile, dismissal with prejudice is warranted.  *See Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) (finding district court did not abuse discretion in dismissing complaint with prejudice where "amendment would be futile in light of the fundamental deficiencies in plaintiffs' theory of liability"); *McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009) ("Once a court has determined that the complaint is truly unamendable, a dismissal without prejudice is of little benefit to the litigant, as the claim cannot be made viable through reformulation.").

Thomas has already amended the pleading once in response to a prior motion to dismiss.  *See* ECF Nos. 1 & 6.  As to the ADA claim (Count III), Thomas failed to remedy the defects, ECF No. 6-1 at 9; *see* ECF No. 9-1, and it is unlikely she can,  ECF No. 12 at 15.  Accordingly, Thomas's claims under the ADA are dismissed with prejudice.  *See Cozzarelli*, 549 F.3d at 630.

18

Likewise, no amount of amendment could change that the County had not violated 8-14C of the Montgomery County Code at the time it denied Thomas lactation space.[5]  The dismissed claims must be with prejudice.

**V.    Conclusion**

For the foregoing reasons, Montgomery County's Motion to Dismiss, ECF No. 11, is denied as to Counts I, II, and IV, and granted as to Counts III and V–XXV.  A separate order follows.

Date:  <u>July 21, 2026</u>                                              <u>    /s/                         </u>
                                                                       PAULA XINIS
                                                                       United States District Judge

---

[5] Of course, dismissal based on the LGTCA, which is grounded in immunity, would be without prejudice.  *See Lancaster v. Sec. of Navy*, 109 F.4th 283 (4th Cir. 2024) (noting that dismissal without prejudice is proper where defendants are entitled to sovereign immunity).